## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Noah T. Williams
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana
Indianapolis, Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Enemias Mezo-Reyes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 12, 2016

Court of Appeals Case No.
53A01-1508-CR-1059

Appeal from the Monroe Circuit
Court II

The Honorable Marc R. Kellams,
Judge

Trial Court Cause No.
53C02-1501-F1-81

**Altice, Judge.**

**Case Summary**

[1] Enemias Mezo-Reyes appeals the denial of his motion for bond reduction. He contends the trial court abused its discretion by maintaining an excessive bond amount in the face of evidence that the amount was originally based on false or misleading testimony by a State's witness.

[2] We affirm.

## Facts & Procedural History

[3] On January 22, 2015, the State charged Mezo-Reyes with four counts of child molesting, one as a Level 1 felony and three as Level 4 felonies. The alleged victims were his eleven-year-old twin stepdaughters. At the initial hearing, Mezo-Reyes's bond was set at $50,000 surety and $500 cash. Mezo-Reyes was remanded to the Monroe County Correctional Center (MCCC). While in MCCC's custody, the Department of Homeland Security filed an immigration detainer on Mezo-Reyes.

[4] The State filed a Motion to Increase Bail on March 19, 2015, alleging "additional evidence relevant to high risk of nonappearance, specifically Defendant's intent and explicitly stated plan to flee the jurisdiction and flee the country." *Appellant's Appendix* at 29. At the bond review hearing the next day, the State presented the testimony of Josefa Luce, an employee of the Monroe County Prosecutor's Office who is fluent in Spanish. Luce had listened to a number of Mezo-Reyes's telephone conversations made from MCCC to his wife and brother. Based on several of these recorded conversations, Luce testified that Mezo-Reyes intended to post bond and then flee to Mexico where

he had family. According to Luce, Mezo-Reyes intended to avoid dealing with the charges in this case by returning to Mexico.

[5] At the conclusion of the hearing, the trial court determined that the State had established clear and convincing evidence of a high risk of flight should Mezo-Reyes post bond. The court noted Mezo-Reyes's resident status, the nature and gravity of the charges, and his stated intention to leave the country to avoid prosecution. Accordingly, the court increased bond to $200,000 surety and $5000 cash.

[6] On July 21, 2015, Mezo-Reyes filed a Motion for Bond Review/Alteration of Bond. At the subsequent bond review hearing, Luce was called as a witness by the defense to clarify that Mezo-Reyes never used the word "flee" during the recorded conversations. The State conceded this point. Rather than fleeing, Mezo-Reyes spoke repeatedly about wanting to return to Mexico and posting bond so he could be deported. In his conversations, he indicated a preference to be deported. He stated that he could see his daughters in Mexico, that he did not want to be in prison all of his life, and that there was nothing else for him to do here. Luce testified that based on everything she heard, she believed Mezo-Reyes was planning to "leave to Mexico." *Transcript* at 20. She clarified her interpretation of the conversations further, "whether it's leave or flee, his goal is to not be here, not be in jail, and to be in Mexico." *Id*. at 24.

[7] Mezo-Reyes also testified at the hearing. He indicated that he is a citizen of Mexico and came to the United States nineteen years ago at the age of ten. He

acknowledged that if he were in Mexico, he would have difficulty returning for trial because he does not "have papers to come back here." *Id*. at 46. Mezo-Reyes testified that his wife, brother, and uncles live in Indiana, that he has never failed to appear for court before, and that he has worked at the same place for the last nine years. During cross examination, the defense stipulated that Mezo-Reyes's wife had indicated her willingness to return to Mexico with him and the children.

[8] At the conclusion of the hearing, the trial court noted the seriousness of the charges involving two child victims and Mezo-Reyes's "apparent illegal status". *Id*. at 53. The court concluded, "there's enough uncertainty about the defendant's appearance to support the increased bail." *Id*. at 58. Accordingly, the court denied Mezo-Reyes's request. Mezo-Reyes now appeals.[1]

## Discussion & Decision

[9] The amount of bond is within the discretion of the trial court and will be reversed on appeal only for an abuse of that discretion. *Lopez*, 985 N.E.2d at 360. "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *Sneed v. State,* 946 N.E.2d 1255, 1257 (Ind. Ct. App. 2011). Generally, bond is

---

[1] The denial of a motion to reduce bond is a final judgment appealable as of right. *Lopez v. State*, 985 N.E.2d 358, 360 (Ind. Ct. App. 2013), *trans. denied*.

considered excessive if it is set at an amount higher than reasonably calculated to ensure the accused's presence in court. *Lopez*, 985 N.E.2d at 360.

[10] In setting the amount of bond, the trial court is required to consider all facts relevant to the risk of nonappearance, including the following factors listed in Ind. Code § 35-33-8-4(b):

> (1) the length and character of the defendant's residence in the community;
>
> (2) the defendant's employment status and history and his ability to give bail;
>
> (3) the defendant's family ties and relationships;
>
> (4) the defendant's character, reputation, habits, and mental condition;
>
> (5) the defendant's criminal or juvenile record…;
>
> (6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;
>
> (7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;
>
> (8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance;
>
> (9) that the defendant is a foreign national who is unlawfully present in the United States under federal immigration law; and
>
> (10) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant

might not recognize and adhere to the authority of the court to bring him to trial.

[11] I.C. § 35-33-8-5 provides the State and a defendant with the opportunity to seek alteration of bond. Subsection (c) of the statute states in relevant part: "When the defendant presents additional evidence of substantial mitigating factors, based on the factors set forth in section 4(b) of this chapter, which reasonably suggests that the defendant recognizes the court's authority to bring the defendant to trial, the court may reduce bail."

[12] Although our review of an initial setting of bond and our review of a trial court's denial of a motion to reduce are conceptually and legally distinct, the two inquiries substantially overlap. *Lopez*, 985 N.E.2d at 361. In determining whether to reduce bond, the trial court considers the same statutory factors relevant to the initial setting of bail. *Id*.

[13] In considering Mezo-Reyes's request to reduce bond, the trial court held a hearing and received evidence. Although Luce acknowledged that Mezo-Reyes never used the word flee, she testified that during the recorded calls, Mezo-Reyes consistently spoke of returning to Mexico. Mezo-Reyes indicated in these calls that he did not want to be in prison all of his life, that there was nothing else for him to do here, and that he could be with his daughters in Mexico. There was also evidence presented that Mezo-Reyes's wife agreed to return to Mexico with the children. Further, based upon Mezo-Reyes's own testimony and the statements of his counsel, it could be reasonably inferred that he was an undocumented immigrant.

[14] Based upon the evidence presented at the July 2015 hearing, the trial court concluded that enough uncertainty remained with respect to the risk of nonappearance to support the increased bail ordered at the conclusion of the March 2015 hearing. While Mezo-Reyes presented evidence of his ties to Indiana,[2] these ties were countered by his own stated desire to return to Mexico with his wife and daughters and by indications that he was in the United States illegally. The trial court also noted the seriousness of the charges.

[15] In light of the evidence presented, it was within the trial court's discretion to find that Mezo-Reyes posed a heightened risk of nonappearance based upon his recorded statements to family. The trial court did not abuse its discretion by denying the motion for bond reduction and maintaining the bond at $200,000 surety and $5000 cash.[3]

[16] Judgment affirmed.

[17] Robb, J., and Barnes, J., concur.

---

[2] He had lived in Indiana for nineteen years, had family (wife, daughters, and other relatives) in Indiana, and had worked for the same employer for nine years before his arrest.

[3] Mezo-Reyes cites two cases for his argument that the bond amount is excessive. These cases are inapposite because they involved cash-only bonds with no evidence that the defendants were flight risks beyond the severity of their charges. *See Winn v. State*, 973 N.E.2d 653, 656 (Ind. Ct. App. 2012) (severity of the charges supported the amount, but the absence of other factors indicating the defendant was a flight risk lead the court to conclude the trial court should have granted his request for the option of a surety bond); *Sneed*, 946 N.E.2d at 1260 (same).